UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) ) ) ) ) ) ) ) ) ) ) | Cr. No. 04-10160 |
| ANSELMO DOMINGUEZ | | |

**ANSELMO DOMINGUEZ'S SENTENCING MEMORANDUM**

**I.   Introduction**

The defendant, Mr. Anselmo Dominquez, respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a) in light of *United States v. Booker*, 125 S. Ct> 738 (2005)

*Booker* restored the district courts' historic function and ability to fashion a sentence tailored to the individual circumstances of the case and defendant before it by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines.  In fact, under Section 3553(a), courts are required to sentence below the guideline range if such a sentence would be sufficient to achieve the purposes of punishment.

Mr. Dominquez requests that the court impose a sentence of thirty six months incarceration, with a three year term of supervised release, a one hundred dollar special assessment and no fine. Such a sentence would constitute a variance from the applicable guideline range, but is justified by the facts of this case, and is also "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a) (2).  United States v. Booker, 125 S.Ct. 738 (January 12, 2005).  Under the circumstances of this case which include Mr. Dominguez's history of honesty, hard work, devotion to family, his small role in the offense, the short period of involvement in the offense, and his certain deportation, a sentence of 36 months incarceration is reasonable, sufficient and not greater than necessary.

**II. Procedural Background**

Mr. Dominguez was convicted after a three day jury trial of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846.[1]  Following Mr. Dominquez' trial, a Presentence Report (hereinafter the "Report") was prepared, and provided to the defense.

**III. Argument**

Following the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2).  Booker 125 S.Ct. at 764-65.  In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7).  The sentencing guidelines are no longer binding on the court.  Id.

---

[1] Mr. Dominguez was represented in pretrial proceedings and at trial by an attorney who, shortly after the trial, was barred from practicing law.  Undersigned counsel was subsequently appointed to represent Mr. Dominguez pursuant to the Criminal Justice Act.

2

1. <u>Mr. Dominguez' personal history and characteristics, and the nature and circumstances of the offense. (§ 3553(a)(1))</u>

The statute directs the Court to consider Mr. Dominguez's personal history and characteristics, and the nature and circumstances of the offense. Mr. Dominguez was born in the Dominican Republic in 1968 to a poor, but honest and religious family (¶81). He left school in the 9th grade to start work to help his parents support the family.(¶102) For a dozen years before he immigrated to the United States at the age of 28, he operated a small business selling automobile and motorcycle parts.

In approximately 1991, Mr. Dominguez began dating his wife, Mirope, a childhood friend who had returned to the Dominican Republic from the United States. She was recently divorced, and had two children form her first marriage, Kevin and Alvin. Two years later, Anselmo and Mirope were married, and they were blessed with the birth of their first child, Anselmo Jr. Shortly thereafter, Mrs. Dominguez returned to the United States so as not to lose her Permanent Resident Status. Mr. Dominquez waited three years to receive permission from immigration authorities to join his wife and child in the United States, and when he did so, he entered and remained in the country legally, and he has Permanent Resident Status.

From his first days in the United States, Mr. Dominguez has worked hard to better himself and provide for his family. When he first arrived in the country, he took on two jobs, working a shift in a nursing home in Haverhill, and then traveling to the second job in a restaurant washing dishes. (¶¶109-110) He continued to work in the nursing home until 2001, when it went out of business. He immediately found himself another job, this time at Fantini Baking Company in Haverhill, where he worked on the production line

for two years, until he was laid off in March 2003 due to the company's staffing reduction.

The hard work of Mr. Dominguez and his wife, who has been employed as a Certified Nursing Assistant for the past 9 years, helped them begin to achieve the immigrant's American dream. They bought a two family home in 1999, where they lived with their children, renting out the apartment to help defray the mortgage costs (¶¶ 98,115). Mr. Dominguez raised Kevin and Alvin, Mirope's children from her first marriage as his own, and they refer to him as their father. In 1997, Mirope gave birth to their daughter Chantelle, and in 2000 to their son, Dairel. Their children did well in the local school system, and Kevin, Alvin and Anselmo, Jr. were active in extramural sports and activities. It was not easy raising a family with both parents working, often on different shifts, but Mr. Dominguez and his wife made it work. They arranged their schedules so that he would work early shifts from 7am to 3pm and she would work the evening shift from 3pm to 11pm. When she worked nights, he would be there to make meals, help with homework, put the kids to bed and clean up after. Without hyperbole, the truth is his children are the center of his universe, and he was a dedicated and involved father. He drove his sons to practices, the YMCA and the Boys Club, and attended their games. Their home is full of the trophies the boys have won in various sports (¶96), with Kevin in particular excelling in basketball. Kevin graduated from Haverhill High School and joined the United States Marine Corps. He is currently on active duty, and is stationed in Iraq. His mother relates that when he has a chance to call home is first question is how is his father.

4

The lay off from the baking company proved difficult for the family. Mr. Dominguez was able to collect unemployment while he looked for a new job, but he had less luck than he had in the past finding new employment, despite filling out endless applications for work. After approximately eight months, he and a friend decided to open a small grocery market that became available for rent. (¶107) They had no experience in the business and no established credit with the suppliers. It was through this grocery business that Mr. Dominguez met his co-defendant Rosario. Rosario first approached him because he was interested in renting the grocery store. According to Mr. Dominguez' understanding, Rosario already had one store, and wanted to open a second. Learning that Mr. Dominguez had already rented the store, Rosario cautioned him that he had no experience and that it was a difficult business to get started in. Befriending Mr. Dominguez, he offered to help him get started, allowing him to buy produce through his vendors and suppliers, and advising him on the business.

Despite Mr. Dominguez' best efforts, the grocery business was slow to take off, lacked the capital a new business needs, and never made sufficient revenue to pay suppliers, the rent and salaries. Perhaps sensing this economic vulnerability, and taking advantage of the new friendship, Rosario told Mr. Dominguez that he would pay Mr. Dominguez money if he could find a customer for cocaine that Rosario had for sale. Mr. Dominguez had no prior experience or involvement in this "business"; however, after several approaches by Rosario, confronted by pressing financial worries, he made a horrible mistake. He remembered a former co-worker at the nursing home, Freddy, who was rumored to be involved with cocaine. Mr. Dominguez introduced Rosario to Freddy, and, with Mr. Dominguez's knowledge and minimal assistance, sold cocaine to Freddy.

Rosario delivered the cocaine directly to Freddy, and Freddy paid Rosario directly.  Mr. Dominguez role involved assisting Rosario getting in contact with Freddy, or passing messages along.  For this, he was paid a few hundred dollars.  Freddy was the only customer that Mr. Dominguez provided to Rosario.  Mr. Dominguez entire involvement with Rosario and Freddy lasted no more than 3 months.  This brief episode encompasses Mr. Dominguez' entire criminal "career".  It stands in stark contrast to a life otherwise exemplified by hard work, observance of the law (even when he had to wait three years to be reunited with his wife and child, he did so and came to the country legally) and dedication to his familial responsibilities.  After his arrest, and subsequent pretrial release, he found work at Paperboard Corp., where he was a valued employee (¶104).  He continued working, providing for his family, being the involved father he had always been, until his release was revoked after his trial.

   2. <u>The need for the sentence  a)"to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", b) "to afford adequate deterrence to criminal conduct", c)  "to protect the public from further crimes of the defendant", and d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(A-D))</u>

Mr. Dominguez stands convicted of a serious crime; a sentence of three years in prison and a lifetime exile from this country and his family is a severe sentence, one which sufficient to both punish Mr. Dominquez and deter him from any further criminal activity   Since his conviction last June, he has been held at MCI Cedar Junction, the Commonwealth's maximum security prison. As a future deportee, despite being a first time non-violent offender, he will not serve his sentence in a federal prison camp, but will be designated to a higher security facility, which primarily houses more serious

offenders.  He will not be eligible for early release to a community confinement center, and while serving his sentence, he will not be able to look forward to the day when he will be reunited with his wife and family in Haverhill.

There is nothing in Mr. Dominguez' background, or in the nature of the offense, that indicates the public needs to be protected from further crimes by the defendant, or that a lengthier sentence is necessary to prevent recidivism.  *See United States v. Lucania* 379 F.Supp 2d 288,297 (EDNY 2005)("Post-Booker courts have noted that recidivism is markedly lower for older defendants.)  As noted, *supra*, this is Mr. Dominguez' first offense, and in which he played a small role over a brief period of time.  He will be 38 years old in July and, as his deportation is certain there seems to be no basis to conclude more incarceration than is proposed is necessary to protect the public.  Lastly, Mr. Dominguez is not in need of any specialized educational, medical or other treatment that can be effectuated by lengthy incarceration.

3.  <u>The "kinds of sentences available."(§ 3553(a)(3)), the "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement"(§ 3553(a)(3)-(5))</u>.

As noted, *supra*, a Presentence Report was prepared in this case, and it included the following findings: Mr. Dominquez has no prior criminal history, and therefore has a Criminal History Category of I (¶¶75-76); he was not found to be a leader, organizer or manager, and no Adjustment for Role in the Offense was made (¶ 67).  The Report concluded that the total amount of cocaine found to be reasonably foreseeable to Mr. Dominquez was one kilogram, which corresponds to a Total Offense level to be 26, with a guideline range of 63 to 78 months incarceration.  The report also notes that Mr. Dominquez is subject to a minimum mandatory sentence of five years (¶118).

Since the preparation of the Report, Mr. Dominquez made a proffer with law enforcement, and therefore, upon information and belief, he is now meets the criteria set forth in 18 U.S.C. §3553(f)(1)-(5) (*See* U.S.S.G.§5C1.2), and qualifies for the two point "safety valve" adjustment (U.S.S.G. § 2D1.1(b)(6)) making his total offense level 24, with a corresponding guideline range of 51 to 63 months. Pursuant to 18 U.S.C. §3553(f), Mr. Dominguez may be sentenced without regard to applicable minimum mandatory sentences.

The *Booker* Court made clear that rote application of guideline sentences is no longer permissible. The applicable guideline range is but one of the factors set forth in 18 U.S.C. §3553, all of which must be considered. The only mandatory duty a court has is to impose a sentence not greater than is sufficient to effectuate the statutory goals.

4. The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6)).

A sixth factor courts are required to consider post-*Booker*, is the need to avoid unwarranted sentence disparities among factually similarly situated defendants. It is suggested this factor is logically related to, and indeed repeats and reinforces another explicit directive set forth in §3553(a)(2)(A), that the sentence imposed "promote respect for the law". Respect should not be read to mean not simply that a sentence promotes fear, but that the sentence comports with a traditional sense of fairness. Read in connection with the sixth factor addressing sentence disparity, and indeed the other enumerated factors, a sentence promotes respect for the law when it takes into account

and reflects the similarity or dissimilarity between various defendants' personal history, characteristics, and the crimes of conviction.

In the present case, a reading of the Offense Conduct section of the Report reveals that co-defendant George Montilla was a cocaine supplier distributed at the minimum 3 ½ kilograms of cocaine(¶¶ 9-13,25-27, 37-43). Mr. Montilla received a sentence of 42 months. Luis Castro, identified in the Report as a source of cocaine (¶¶ 7-8) and who provided Rosario with two kilograms of cocaine (¶9-13), received a sentence of 42 months. Juan Rosario, who brought Mr. Dominguez into this affair, and who, from a fair reading of the Report, is also an experienced cocaine trafficker, received a sentence of 39 months.

It may be the case that all these individuals cooperated with the government, post arrest. Certainly Mr. Rosario did, as he testified at trial. Nevertheless, the important statutory goals of respect for the law, and avoidance of disparate sentences would not be advanced if the suppliers receive lesser sentences than someone who played such a small role in the affair, yet went to trial, as did Mr. Dominguez. Respect for the law is diminished in the larger community, among the citizenry, when the more culpable receive lesser sentences than those less culpable.

### IV. Conclusion

This is truly a case where no amount of words can express the remorsefulness Mr. Dominguez's feels over what he has done, and the pain he has caused his wife and children. In a time of stress and weakness, he engaged in conduct that was completely out of character, and which he will forever regret. In his proffer with the government, he has confessed all he knows, limited as that is. He faces a future that any loving father

9

would find simply horrific. The sentence proposed herein reflects the seriousness of his crime, and provides adequate and severe punishment, and is true to the guidance the *Booker* Court and the statute have provided

                                        Respectfully Submitted,
                                        Anselmo Dominguez
                                        By his attorney

                                        _/s/ Michael C. Andrews_
                                        Michael C. Andrews
                                        21 Custom House Street
                                        Boston, Massachusetts 02110
                                        (617) 951-0072
                                        BBO# 546470